**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**AXIS INSURANCE COMPANY,**

    **Plaintiff,**

-vs-                    Case No. 3:10-cv-393-J-37JBT

**FARAH & FARAH, P.A., EDDIE FARAH,**
**MICHAEL D. MARRESE, F. CATFISH**
**ABBOTT and TRACEY B. TURNER &**
**TRACY R. TURNER, individually and on**
**behalf of their minor son, T.T.T.,**

    **Defendants.**

_____

## ORDER

This cause comes before the Court on Plaintiff AXIS INSURANCE COMPANY's ("Axis") Motion for Final Summary Judgment (Doc. No. 33), filed on November 16, 2010. Defendants FARAH & FARAH, P.A., EDDIE FARAH ("Mr. Farah"), MICHAEL D. MARRESE ("Mr. Marrese) filed their response jointly (Doc. No. 50), and F. CATFISH ABBOTT ("Mr. Abbott") filed his response separately (Doc. No. 49), on January 7, 2011. After a careful consideration of the parties' submissions and their oral arguments at the motion hearing before the Undersigned, the Court DENIES the motion.

### BACKGROUND

In or about August 2003, Farah & Farah, P.A., Mr. Marrese and Mr. Abbott filed a lawsuit in the United States District Court for the Middle District of Florida on behalf of their clients, the Turners, with respect to the alleged medical negligence on the part of the United States government

1

(Naval Hospital, Jacksonville), alleging hospital negligence in treating Mr. And Mrs. Turner's minor child who suffered serious and permanent injuries as a result. Additionally, that complaint also alleged that Mr. and Mrs. Turner, as parents, were entitled to loss of consortium damages. In a bench trial, United States District Judge Henry Lee Adams, Jr. found for the Turners and awarded the parents loss of consortium damages in the amount of $809,059.00 each.

The government appealed Judge Adams' ruling to the Eleventh Circuit Court of Appeals. *See Turner v. United States*, 514 F.3d 1194 (11th Cir. 2008). The appellate court held that the trial court lacked jurisdiction over the Turners' consortium claims because they were filed in the district court less than six months from the date Mr. and Mrs. Turner's administrative claims were filed with the Navy; consequently, the court concluded that the claims were forever barred from refiling. *Id.* at 1202 n.5. As a result of the Eleventh Circuit's decision, on or about November 11, 2009, the Turners brought a claim for legal malpractice against the attorney Defendants in state court. (*See* Doc. No. 21, Ex. D.) In the underlying state court action, the Turners allege that the claim forms SF-95s were negligently prepared and/or that the medical negligence suit was prematurely filed; that Mr. Abbott failed to take measures to prevent the same; and, that the opinion of the Eleventh Circuit Court of Appeals determined that judgments in favor of the Turners were forever lost as a result. (*Id.*)

Before the underlying legal malpractice complaint was filed, on or about June 19, 2009, Defendant Farah & Farah, P.A. applied for professional liability insurance coverage with the Axis Insurance Company, Plaintiff in the instant action. (*See* Doc. No. 21, Ex. B.) In its application, Defendant Farah & Farah, P.A. represented to Axis that neither the firm nor any person proposed for coverage was "aware of any fact, error, omission, circumstance or situation that might provide grounds for any claim under the proposed insurance." (*Id.*) In its declaratory judgment complaint

before this Court, Axis contends that the Policy does not cover claims arising out of the Turner medical malpractice lawsuit, because at the time of Farah & Farah P.A.'s application for insurance, an insured knew about, but failed to disclose, the potential professional liability claim. (*See generally* Doc. No. 21.) Axis contends that F. Catfish Abbott is an insured under the policy, that he knew of the Turner's malpractice claim at the time Farah & Farah, P.A. applied for the policy of insurance and that the failure to disclose this fact vitiates coverage. Axis further seeks a declaratory judgment finding that it is not obligated to defend or indemnify Farah & Farah, P.A., Eddie Farah, Michael Marrese and F. Catfish Abbott in the lawsuit brought against them by the Turners in the underlying state court action.

## AXIS' MOTION FOR SUMMARY JUDGMENT

Axis issued a claims-made Lawyers Professional Liability Policy to Defendant Farah & Farah, P.A., as Named Insured, effective 12:01 a.m. on June 19, 2009. (Doc. No. 35, Ex. 1) ("This is a claims made and reported policy. It applies only to those claims that are both first made against the insured and reported in writing to the company during the policy period."). Under the terms and conditions of said Policy, an insured, in relevant part, is defined as "any lawyer previously affiliated with the Named Insured or a Predecessor Firm as a partner, officer, director, stockholder-employee, associate, manager, member or salaried employee." (*Id.*) Furthermore, Axis was to provide coverage for claims arising out of "an act or omission in the performance of [l]egal [s]ervices," provided that, among other requirements, "prior to . . . the inception date of first policy issued by [Axis] . . . no [i]nsured had a basis to believe that any such act or omission . . . might reasonably be expected to be the basis of a [c]laim." (*Id.*)

In its motion for summary judgment, Axis contends that there is no material issue as to whether Mr. Abbott is an insured under the Policy.[1] (Doc. No. 33 at 10.) As evidenced by the public records of the State of Florida Department of State, Division of Corporations, (Doc. No. 35, Ex. 5), which show that Farah & Farah, P.A. changed its name to Farah, Farah & Abbott, P.A., effective May 6, 2003, and later changed its name back to Farah & Farah, P.A. effective April 11, 2005, Axis argues, Mr. Abbott is a former partner of Farah, Farah & Abbott, P.A. or Farah & Farah, P.A. (Doc. No. 33 at 10-11.) Additionally, Axis asserts, Mr. Abbott admits to being an insured as defined under the Policy. (*Id.* at 10.)

Moreover, Axis contends that there is no genuine dispute as to any material fact regarding whether Mr. Abbott had prior knowledge of a potential malpractice claim. (*Id.* at 7.) The "prior knowledge" provision of the Policy applies to preclude coverage of the Turner professional malpractice lawsuit, Axis argues, because prior to the inception date of the Policy at least one of the insureds had a basis to believe that an act or omission in the performance of legal services might reasonably be expected to be the basis of a claim. (Doc. No. 33 at 2.) Relying on Mr. Abbott's responses to Request for Admissions, Axis contends that long prior to the inception date of the Policy, Mr. Abbott advised the Turners that they may have a malpractice claim against Farah & Farah, P.A. (*Id.*)

In addition to Mr. Abbott's responses to the Request for Admissions, Axis relies on Mr. Abbott's 'notes to his file' ("NTF"), which he allegedly produced in the underlying professional malpractice case. Mr. Farah, Mr. Marrese and Farah & Farah, P.A. request that any NTF statements be stricken because Axis neither verified nor authenticated the information contained

---

[1] At the motion hearing, Axis stipulated that it solely relies on provision F.2., p. 3 of the Policy, in support of its motion. Moreover, in its filed papers before the Court, Axis primarily relies on the premise that Mr. Abbott was previously affiliated with the Named Insured as a partner.

4

within those documents. (Doc. No. 50 at 3 n.1.) The Court agrees. "On motions for summary judgment, the Court may consider only that evidence which can be reduced to an admissible form." *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005). Because Axis failed to authenticate the NTF documents (Doc. No. 35, Ex. 2) in its original filing,[2] it cannot properly support the motion for summary judgment. *See Saunders v. Emory Healthcare, Inc.*, 360 Fed. Appx. 110, 113 (11th Cir. 2010) (*per curiam*) (citation omitted) (stating that "[t]o be admissible in support of or in opposition to a motion for summary judgment, a document must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence").

For precedential support, Axis heavily relies on *Coregis Insurance Company v. McCollum*, 961 F. Supp. 1572 (M.D. Fla. 1997). There, the insurance policy application contained a similar question regarding prior knowledge of a potential claim, to which the named insured also answered in the negative. *Id.* at 1575. In that case, an associate attorney in the law firm prepared an internal memorandum stating, centrally, that if the law firm attempted to collect its fees from a former client and that client retained an attorney, that attorney would recommend that the former client sue for malpractice. *Id.* at 1576. The defendants there argued that the law firm, as the principal, did not know of the associate's memorandum or the possibility of a claim by the former client and that the associate could not know or reasonably foresee that a claim would arise. *Id.* at 1579. Those arguments were summarily rejected by the court, reasoning that the policy language clearly stated that coverage will not be afforded if at the effective date any insured under the policy knew or could have reasonably foreseen any claim arising out of any act, error, omission or personal injury that

---

[2] Although on or about June 8, 2011, Axis filed Mr. Abbott's affidavit properly authenticating the NTF documents (Doc. No. 76, Ex. 1), as stated at the hearing, the Court will not consider documents filed five months after the motion was ripe for disposition in deciding this motion for summary judgment. Additionally, the Court notes that even if considered, it would not persuade the Court to change its ruling on the present motion. *See also infra* note 3.

might be expected to be the basis of a claim or suit. *Id.* Axis concludes that the Court should follow the reasoning in *McCollum* and hold that because an insured, Mr. Abbott, knew of a potential claim, and no insured advised Axis of the same before the inception date of the Policy, there is no coverage for the malpractice claim brought by the Turners under the plain terms of the Policy and the applicable law.

### MR. ABBOTT'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Mr. Abbott, in his Response to Axis' Motion for Summary Judgment (Doc. No. 49), agrees with Axis that he is an insured, but contends that he is more accurately an "innocent insured" as defined under the Policy. The "innocent insured" provision states that "[w]henever coverage under this Policy would be excluded, suspended or lost because of any exclusion relating to criminal, dishonest, fraudulent, or malicious conduct by any person insured hereunder, the [insurance] [c]ompany agrees that such insurance . . . shall be applicable with respect to an [i]nsured person who did not personally participate or personally acquiesce in or remain passive (including failure to give timely notice) after having knowledge of such conduct." (Doc. No. 21, Ex. C.)

Mr. Abbott agrees with Axis that he was a former partner at Farah & Farah, P.A. or Farah, Farah & Abbott, P.A., and that he had actual knowledge regarding the potential malpractice claim by the Turners. However, because he had fulfilled his disclosure obligation under the Policy by notifying the law firm's principals of the potential claim, and because at the time of the inception date of the Policy he was no longer affiliated with the firm, Mr. Abbott contends, he is an innocent insured and Axis has a duty to defend and indemnify him personally. (Doc. No. 49 at 2.) Therefore, according to Mr. Abbott, disputed issues of material facts remain as to whether he is an innocent insured and the motion for summary judgment should be denied. (*Id.*)

### FARAH & FARAH, P.A.'S, MR. FARAH'S AND MR. MARRESE'S

**JOINT RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

In their joint response (Doc. No. 50), Defendants Farah & Farah, P.A., Mr. Farah and Mr. Marrese dispute Mr. Abbott's "insured" status, stressing that Axis' factual bases offered in support of the conclusion that Mr. Abbott is a former partner are legally and factually insufficient. First, they argue that Axis' reliance upon Mr. Abbott's response to Request for Admissions seeking admission of a legal conclusion, i.e. whether Mr. Abbott is an insured under the Policy, is improper. (*Id.* at 8) (citing *United States v. Block 44, Lots 3, 6, Plus the West 80 Feet of Lots 2 & 5, et al.*, 177 F.R.D. 695 (M.D. Fla. 1997) (noting that a request for admission of a conclusion of law is improper)). Second, they assert that the corporate name change documents Axis submitted only demonstrate that there were undisputed corporate name changes (*Id.* at 9), and that it does not show the absence of a genuine dispute as to whether Mr. Abbott was ever a "partner" of Farah & Farah, P.A. or Farah, Farah & Abbott, P.A. (*Id.*)

Further disputing Axis' conclusion that Mr. Abbott is a former partner, Mr. Farah and Mr. Marrese both filed affidavits (Doc. Nos. 55 and 56) attesting that Mr. Abbott was never a partner of Farah & Farah, P.A. or Farah, Farah & Abbott, P.A. In his affidavit, Mr. Farah stated that Farah & Farah, P.A. and Mr. Abbott entered into an agreement on April 30, 2003, pursuant to which Mr. Abbott was going to move the operation of his entire law practice into the physical premises of Farah & Farah, P.A. (Doc. No. 55, Ex. A.) In addition, Mr. Abbott was to bring with him a support staff of attorneys and secretaries, and would be responsible for the salaries and all benefits of these support staff personnel. (*Id.*) On a monthly basis, Mr. Abbott was to reimburse Farah & Farah, P.A. for any copies, postage, long distance telephone calls, facsimiles, office supplies, and any other items of expense incurred. (*Id.*) Moreover, the parties agreed that Mr. Abbott's last name would appear on top of Farah & Farah, P.A.'s letterhead, and further, that Mr. Abbott would

7

have the right to be listed individually as Fred M. Abbott, P.A. on the left side of the firm's stationary where individual attorney names are placed. (*Id.*) The parties further agreed that Mr. Abbott would provide litigation support, service, direction and decision-making for identified bodily injury and wrongful death cases, for which he would be compensated on a sliding scale for any cases in which he had any involvement. (*Id.*)

According to Mr. Farah, during the time the law firm was known as Farah, Farah & Abbott, P.A., Mr. Abbott was never a shareholder, an officer, a director, a salaried employee, and was never hired as an associate, manager, or member of the law firm. (Doc. No. 55 at 5.) The law firm never effected any type of partnership arrangement, agreement or filings in accordance with the Florida partnership laws. (*Id.* at 6.) Furthermore, from April 30, 2003 until at least September 1, 2004, Mr. Abbott oversaw the litigation of Farah, Farah & Abbott, P.A.'s bodily injury and wrongful death claims in accordance with the 2003 agreement; however, Farah, Farah & Abbott, P.A. and Mr. Abbott's law practice were still separate and distinct business entities working under the same roof, with each entity using separate tax identification numbers. (*Id.* at 7.) It is Mr. Farah's contention that the law firm's relationship with Mr. Abbott was nothing more than a fee-sharing agreement on identified cases. (Doc. No. 50 at 11.)

## II. LEGAL STANDARD

*A. Summary Judgment*

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Fennell v. Gilstrap*,

559 F.3d 1212, 1216 (11th Cir. 2009) (citing *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Evidence is reviewed in the light most favorable to the non-moving party. *Fennell,* 559 F.3d at 1216 (citing *Forman*, 509 F.3d at 1356). A moving party discharges its burden by showing that there is an absence of evidence to support the non-moving party's case. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (stating "conclusory allegations without specific supporting facts have no probative value"). This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the [C]ourt must deny the motion and proceed to trial." *Id.* (quoting *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983)).

*B. Contract Interpretation*

"The interpretation of an insurance contract is a question of law." *Kattoum v. N.H. Indem. Co.*, 968 So. 2d 602, 604 (Fla. 2d DCA 2007). It is undisputed that Florida law governs the interpretation of Axis' insurance policy in this case. "Florida law provides that insurance contracts

9

are construed in accordance with the plain language of the policies as bargained for by the parties." *Auto–Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (internal citation omitted). Accordingly, the scope and extent of coverage are determined by the language and terms of the policy, and the policy terms are given their plain and ordinary meaning.

Courts routinely affirm the denial of coverage where an insurance policy contains an unambiguous "prior knowledge" provision and where an insured has knowledge, prior to the effective date of the policy, of acts or omissions that might reasonably provide the basis for a claim. *See, e.g., Lawyers Prof'l Liab. Ins. Co. v. Dolan, Fertig & Curtis*, 524 So. 2d 677, 678 (Fla. 4th DCA 1988) (holding prior knowledge provision clearly and unambiguously barred coverage for claim of which insureds were aware before policy's effective date); *McCollum*, 961 F. Supp. at 1579 (same). However, if the asserted policy language is susceptible of more than one reasonable interpretation, the policy is considered ambiguous and strictly construed against the policy's drafter. *Anderson*, 756 So. 2d at 34. "[E]xclusionary clauses are construed even more strictly against the insurer than coverage clauses." *Id*. While the insured has the burden of proving that a claim against it is covered by the insurance policy, the insurer has the burden of proving exclusion to coverage. *LeFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997).

## DISCUSSION

In order to prevail on its summary judgment motion, Axis must show that there is no genuine dispute as to any material fact as to whether (a) Mr. Abbott is an insured as defined in the Policy, and (b) that Mr. Abbott knew or had reason to believe that there was a basis for a claim. The latter prong appears to be completely undisputed in the record, and thus, the Court is satisfied that Axis has met its burden on this issue. The Court's discussion below will primarily address whether Axis met its burden as to the first prong.

The Court must view the evidence in the light most favorable to the non-moving parties, and it must not weigh the evidence or make any credibility determinations. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) (internal citation omitted). Furthermore, the Court finds, and the parties do not dispute, that the terms of the Policy at issue are clear and unambiguous. As such, pursuant to Florida law, the terms of the Policy will be accorded their plain meaning and enforced as written. The "prior knowledge" provision clearly establishes that if an insured, prior to the inception date of the policy, had a basis to believe that an act or omission might reasonably be expected to be the basis of a claim, and failed to report the same to the insurer, the insured would not be covered for that particular claim. Additionally, the Court finds, and the parties do not appear to dispute, that the definition of an "insured" is also clear and unambiguous. While the Court will interpret and enforce the Policy language as written, the Court cannot decide on motion for summary judgment the underlying facts determinative of whether Mr. Abbott is a former partner, so as to be an "insured." *See generally Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1333, 1339 (S.D. Fla. 2009) (concluding that under Florida law, determinations of whether an insurance policy's notice provision was complied with and what is a reasonable timeline under the surrounding circumstances are questions of fact and are to be left to the jury).

Upon the review of the record, the Court concludes that Axis has not shown that there is no genuine issue of a material fact as to whether Mr. Abbott is a former partner and thereby an insured under the Policy and DENIES Axis' motion for summary judgment. While Axis relies on Mr. Abbott's admission that he is an insured, this statement by itself, as noted by Farah & Farah, P.A., Mr. Farah and Mr. Marrese, is a legal conclusion and insufficient evidence offered to prove that Mr. Abbott is an insured as defined under the Policy. Furthermore, the Court finds that Axis' conclusion that the

corporate name change shows absence of a genuine issue as to Mr. Abbott's status as a former partner of Farah & Farah, P.A. or Farah, Farah & Abbott, P.A. has been sufficiently rebutted by Farah & Farah, P.A., Mr. Farah and Mr. Marrese in their joint response and attached affidavits.[3] While the facts relied upon by Axis, together with matters discussed at the hearing concerning the weight to be accorded to the parties' assertions in light of the relevant portions of the Florida Rules of Professional Conduct may prove to be persuasive, they do not make a showing sufficient to overcome the sworn statements of Mr. Farah and Mr. Marrese that Abbott was not a "partner" of Farah & Farah, P.A. or Farah, Farah & Abbott, P.A. at the relevant time for summary judgment purposes.

Moreover, Axis argues that even in the absence of Mr. Abbott's prior knowledge, the reading of the Eleventh Circuit's opinion in *Turner v. U.S.* alone would put any reasonable attorney on notice of a basis of a potential claim. (Doc. No. 33 at 7.) Thus, continues Axis, there is no genuine issue of fact as to whether the other attorney Defendants had a basis to believe that one of their acts or omissions in the performance of legal services might reasonably be expected to be the basis of a claim. (*Id.*) As attested by Mr. Marrese, however, he did not read the opinion "to mean that any of the attorneys or law firms representing the Turner [f]amily in the Turner [m]edical [c]laim committed any type of 'act or omission in the performance of [l]egal [s]ervices' that might reasonably be expected to be the basis of a 'claim' of legal malpractice." (Doc. No. 56 at 6.) Similarly, Mr. Farah disputes knowing anything about the Turner case. (*See generally* Doc. No.

---

[3] On June 7 and 8, 2011, Axis filed voluminous documents in support of its motion for summary judgment. (*See* Doc. Nos. 72, 73, 74, 75, 76, 77.) The Court does not consider the deposition and other supporting documents in support of Axis' motion for summary judgment, because Axis placed these documents before the Court without any explanation, five months after the motion was ripe for disposition. Axis failed to comply with Fed. R. Civ. P. 56(c)(1) requirement that parties must support the assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations . . . ." A district court is not required to " 'scour the record' " to determine whether there is an absence or presence of a genuine issue of fact to grant or deny summary judgment. *United States ex rel. Crenshaw v. Degayner*, 622 F. Supp. 2d 1258, 1269 (M.D. Fla. 2008) (quoting *L.S. Heath & Sons, Inc. v. AT&T Info. Sys. Inc.*, 9 F.3d 561, 567 (7th Cir. 1993)).

55.)  Viewing the evidence in the light most favorable to the non-moving parties and avoiding any credibility determinations, the Court DENIES Axis' motion on this ground as well.

Lastly, the Court notes that the "innocent insured" provision clearly and unambiguously states that "[w]henever coverage under this Policy would be excluded, suspended or lost because of any exclusion relating to criminal, dishonest, fraudulent, or malicious conduct by any person insured hereunder, the [insurance] [c]ompany agrees that such insurance . . . shall be applicable with respect to an [i]nsured person who did not personally participate or personally acquiesce in or remain passive (including failure to give timely notice) after having knowledge of such conduct." (Doc. No. 21, Ex. C.)   Therefore, pursuant to the plain reading of the provision, the Court rejects Mr. Abbott's argument that he, if insured, would more accurately be an "innocent insured."  As stipulated by Axis at the motion hearing before the Undersigned, Axis does not invoke any exclusion of coverage relating to criminal, dishonest, fraudulent or malicious conduct.  Under the plain terms of the Policy, unless the insurer, Axis, seeks to exclude coverage based on any of the enumerated conduct above, the "innocent insured" provision is not applicable.   Thus, the "innocent insured" provision is not applicable under the present circumstances.

Based on the foregoing, it is ORDERED that Plaintiff Axis Insurance Company's Motion for Summary Judgment (Doc. No. 33), filed on November 16, 2010, is DENIED.

**DONE** and **ORDERED** in Chambers, in Jacksonville, Florida on July 26th , 2011.

_____
ROY B. DALTON JR.
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Party