# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

**AXIS INSURANCE COMPANY,**

**Plaintiff,**

**-vs-**                                              **Case No.   3:10-cv-393-J-37JBT**

**FARAH & FARAH, P.A., EDDIE FARAH,
MICHAEL D. MARRESE, F. CATFISH
ABBOTT and TRACEY B. TURNER &
TRACY R. TURNER, individually and on
behalf of their minor son, T.T.T.,**

**Defendants.**

_____

# ORDER

Plaintiff AXIS INSURANCE COMPANY ("Axis") brings this action against FARAH &

FARAH, P.A., EDDIE FARAH ("Mr. Farah"), MICHAEL D. MARRESE ("Mr. Marrese"), F.

CATFISH ABBOTT ("Mr. Abbott") (collectively "Defendants") and TRACEY B. TURNER &

TRACY R. TURNER (collectively the "Turners") seeking declaratory relief from coverage on a

claims-made-and-reported liability insurance policy issued to the law firm for the policy period

beginning on June 19, 2009 (the "Policy").   Axis seeks a judicial determination that the Policy does

not provide coverage for a legal malpractice action now pending against Defendants for which Axis

is currently providing legal representation.

Before the Court are cross-motions for summary judgment filed by Axis (Doc. No. 89) and

Defendants (Doc. No. 90) on August 24, 2011.   Also before the Court are Defendants' joint

response (Doc. No. 96), filed on September 14, 2011; Axis's response (Doc. No. 97), filed on

September 26, 2011; and, Defendants' reply (Doc. No. 98), filed on October 12, 2011.   Mr. Abbott

waives his right to respond, and takes no position as to either motion for summary judgment (Doc.

No. 95).   Based on the parties' submissions and a review of the applicable law, the Court GRANTS

in part Axis's motion for summary judgment, and DENIES Defendants' cross-motion.

## BACKGROUND

### I.   The Relationship Between Defendants

Farah & Farah, P.A. is an active business entity authorized and governed by the Florida

Business Corporation Act.   Mr. Farah is one of the two shareholders in the law firm.   (Farah Aff. ¶

8, Doc. No. 55.)   Mr. Marrese was employed by Farah & Farah, P.A. as an associate attorney from

September 2001 until December 2008.   (Marrese Aff. ¶¶ 5 and 23, Doc. No. 56.)

In April 2003, Mr. Farah, on behalf of Farah & Farah, P.A., and Mr. Abbott entered into an

Agreement with the purpose to have Mr. Abbott "provide litigation, support, service, direction and

decision making for plaintiff's bodily injury and wrongful death cases to [Mr. Farah] in-house at his

Adams Street law office."   (Farah Dep. Ex. 34, June 7, 2011, Doc. No. 93, Ex. C.)   In pertinent

part, they further agreed that:

> 3. SUPPORT PERSONNEL:  [Mr. Abbott] will bring with him a support staff of
> attorneys and secretaries.  [Mr. Abbott] will be responsible to pay the salaries and
> all benefits of the support staff personnel. . . . [Mr. Farah] will furnish other support
> staff such as receptionist, secretaries, paralegals and nurses as necessary and required
> to do first-class, top-of-the line litigation.   If [Mr. Abbott] uses the services of [Mr.
> Farah]'s nurses, all time spent by the nurse(s) working on each [Mr. Abbott] case
> will be tracked as a cost to the client. . . . [Mr. Farah] will furnish [Mr. Abbott] with
> competent attorneys, such as [Mr.] Marrese and Brian Flaherty, who [Mr. Abbott]
> will direct in the litigation of cases generated by [Mr. Farah] . . . .   In the event that
> any attorneys paid by [Mr. Farah] are to receive a bonus in the way of a percentage of
> a fee recovered on such a case, then [Mr. Farah] and [Mr. Abbott] will agree in
> writing in advance to pay an equal portion of such a bonus from their respective
> share of such a case/fee . . . .

4. LOGISTICAL SUPPORT: [Mr. Farah] will be responsible for furnishing all of the logistical support, such as offices, equipment, supplies, costs of litigation, etc., which are necessary for practicing law that [Mr. Abbott] or his personnel work on under the FARAH, FARAH & ABBOTT name.

5. LETTERHEAD: [Mr. Abbott]'s last name will appear on the top of the letterhead, in addition to "FARAH & FARAH." [Mr. Abbott] will have the right to be listed individually as Fred. M. Abbott, P.A. on the left side of the stationary where individual attorney names are placed.

6. AUTHORITY: [Mr. Abbott] will assume the sole responsibility for and will direct the course of all significant litigation in [Mr. Farah]'s office as to the cases on the list. [Mr. Abbott] will set the standards, guidelines and deadlines for all cases for which he is consulted and involved. [Mr. Abbott] agrees to keep [Mr. Farah] updated on the status of all cases [Mr. Abbott] is involved in by way of a monthly report. Anyone who cannot meet these written requirements will be reassigned or terminated by [Mr. Farah] at [Mr. Abbott]'s request.

(*Id.*) (emphasis removed).

Pursuant to this Agreement, Farah & Farah, P.A. changed the name to Farah, Farah & Abbott, P.A. on or about May 2, 2003. (Farah Aff. ¶ 17, Doc. No. 55.) In April 2005, Mr. Abbott moved his practice away from the law firm's physical premises, at which time the name reverted back to Farah & Farah, P.A. (*Id.* at ¶¶ 27-28.)

## II. Turner v. United States

On August 21, 2003, the Turners' medical negligence lawsuit against the United States of America commenced in the United States District Court for the Middle District of Florida, Case No. 3:03-cv-709-J-25TEM. Mr. Abbott, for Mr. Marrese and on behalf of the law firm Farah, Farah & Abbott, P.A., signed the initial complaint alleging hospital negligence in treating Mr. and Mrs. Turner's minor child who suffered serious and permanent injuries. Additionally, that complaint alleged that Mr. and Mrs. Turner, as parents, were entitled to loss of consortium damages. Following a bench trial, the United States District Judge Henry Lee Adams, Jr. found for the Turners

3

and, most importantly to the instant action, awarded the parents loss of consortium damages in the amount of $809,059.00 each.   The United States appealed Judge Adams's ruling.[1]   *See Turner v. United States*, 514 F.3d 1194 (11th Cir. 2008).

### III.    Decisions of the Eleventh Circuit Court of Appeals

On January 28, 2008, the Eleventh Circuit issued its decision vacating Judge Adams's judgment and held, *inter alia*, that the trial court lacked jurisdiction over the Turners' consortium claims because they were filed prematurely, without allowing six months to pass from the date Mr. and Mrs. Turner's administrative claims (SF-95 forms) were filed with the United States Navy.[2] Consequently, the Eleventh Circuit concluded that the claims for loss of consortium were forever barred from refiling.   *Id.* at 1202 n.5.

On remand, after applying the "reckless disregard" standard of care, Judge Adams reaffirmed the original judgment in favor of the minor son.   *See Turner ex rel Turner v. United States*, 3:03-cv-709-J-25TEM, 2008 WL 2726508 (M.D. Fla. July 1, 2008).   However, in light of the Eleventh Circuit's holding as to the loss of consortium damages, that judgment was lost. Challenging the basis for Judge Adams's reaffirmed judgment, the United States filed a second appeal.   On February 18, 2009, Judge Adams's findings on remand were affirmed in *Turner v. United States of America*, 312 Fed. App'x. 300 (11th Cir. 2009).

### IV.    The Turners' Legal Malpractice Claim

On or about November 11, 2009, the Turners brought a lawsuit for legal malpractice in state court against the attorney Defendants.   (*See* Doc. No. 23, Ex. D.)   In that case, the Turners allege

---

[1] The Turners retained different counsel to represent them on appeal.

[2] The Eleventh Circuit also remanded the entire action back to Judge Adams for application of the "reckless disregard," as opposed to the "ordinary negligence" standard of care to his original factual findings.   *Turner v. United States*, 514 F.3d 1194, 1196, 1202, 1207 (11th Cir. 2008).

that the claim forms SF-95s were negligently prepared and/or that the medical negligence lawsuit was prematurely filed; that Mr. Abbott failed to take measures to prevent the same; and, that the opinion of the Eleventh Circuit Court of Appeals determined that judgment in their favor on the loss of consortium claims was forever lost as a result of Defendants' negligence.  (*Id.*)  It is this underlying legal malpractice action that is the basis of the instant declaratory judgment case.

###### V.    Defendants' Insurance Policy with Axis

On May 4, 2009, Farah & Farah, P.A., through its executive director, Nathan Hendricks, completed and submitted the Markel Shand, Inc.[3] Application for Lawyers Professional Liability Insurance (hereinafter the "Initial Policy Application").  (Hendricks Aff. ¶ 9, Doc. No. 93, Ex. H; *see* Doc. No. 21, Ex. B.)   Under Part II of the Initial Policy Application, titled FINANCIAL AND STAFFING INFORMATION, a question stated: "Provide the names of all lawyers who are presently officers, partners, employed lawyers, of counsels or retired partners of the Applicant and complete the information requested for each lawyer."  (Doc. No. 21, Ex. B.)  Because Mr. Abbott and Mr. Marrese were no longer affiliated with Farah & Farah, P.A. at this time, the list does not contain their respective names.[4]  (*See id*.)

Under Part VI of the Initial Policy Application, titled INSURANCE AND CLAIM HISTORY, a question stated: "Is (are) any person(s) or entity(ies) proposed for this insurance aware of any fact, error, omission, circumstance or situation that might provide grounds for any claim under the proposed insurance?"  (*Id.*)  Mr. Hendricks checked "no" as an answer.  (*Id.*)  Additionally, the Initial Policy Application provided that:

---

[3] Axis refers to the Initial Policy Application as the Evanston Insurance Company application. (Doc. No. 21, Ex. B.)

[4] Among many others, Mr. Farah's name is on the list.  (*Id*.)  This section asked additional questions about staffing, such as how many paralegals and non-lawyer employees there were.  (*Id.*)

> NO FACT, CIRCUMSTANCE OR SITUATION INDICATING THE
> PROBABILITY OF A CLAIM OR ACTION FOR WHICH COVERAGE MAY BE
> AFFORDED BY THE PROPOSED INSURANCE IS NOW KNOWN BY ANY
> PERSON(S) OR ENTITY(IES) PROPOSED FOR THIS INSURANCE OTHER
> THAN THAT WHICH IS DISCLOSED IN THIS APPLICATION.  IT IS
> AGREED BY ALL CONCERNED THAT IF THERE IS KNOWLEDGE OF ANY
> SUCH FACT, CIRCUMSTANCE OR SITUATION, ANY CLAIM
> SUBSEQUENTLY EMANATING THEREFROM SHALL BE EXCLUDED
> FROM COVERAGE UNDER THE PROPOSED INSURANCE.

(*Id.*)

On or about June 2, 2009, Axis agreed to issue the claims-made-and-reported Policy that would incept at 12:01a.m. on June 19, 2009, subject to Axis's receipt, review and written acceptance of its supplemental application, the Application for Axis Pro Mid-Size Lawyers Professional Liability Insurance Representation Statement (hereinafter the "Axis Application").  (*Id.*; *see* Hendricks Aff. ¶ 15.)  The Axis Application, signed by Mr. Farah, contains the following statement:

> [Y]ou hereby represent that your firm and any person proposed for coverage ("the
> Insured"), after inquiry of all partners, officers and managers of the Insured, is not
> aware of any claims against the Insured or circumstances, incidents, disputes or fee
> problems that may give rise to a claim against the Insured, other than those disclosed
> in the application[.]

(Doc. No. 21, Ex. B.)  Finally, the Axis Application states: "This letter and the [Initial Policy Application] will be the basis of the contract and will be incorporated by reference into and made part of the [P]olicy."  (*Id.*)

The Policy's coverage provision, in relevant part, provides as follows:

> [Axis] agrees to pay on behalf of the Insured all sums in excess of the Retention that
> the Insured shall become legally obligated to pay as Damages and Claim Expenses
> because of a Claim that is both first made against the Insured and reported in writing
> to [Axis] during the Policy Period by reason of an act or omission in the performance
> of Legal Services by the Insured or by any person for whom the Insured is legally
> liable, provided that:

. . . .

> prior to the . . . inception date of the first policy issued by [Axis] . . . no Insured had a basis to believe that any such act or omission . . . might reasonably be expected to be the basis of a Claim.[5]

(Doc. No. 21, Ex. C) (emphasis removed) (footnote added).   The Insured, in turn, is defined[6] as:

1. [A]ny lawyer who is or becomes a partner, officer, director, stockholder-employee, associate, manager, member or salaried employee of the Named Insured during the Policy Period shown in the Declarations;

2. [A]ny lawyer previously affiliated with the Named Insured or a Predecessor Firm as a partner, officer, director, stockholder-employee, associate, manager, member or salaried employee[.]

(*Id.*)

## VI.    Procedural History of the Instant Case

On July 22, 2010, Axis commenced this suit seeking a declaratory judgment that it need not provide coverage for the underlying legal malpractice action.  Axis's complaint alleges that the Policy does not cover claims arising out of the Turner medical negligence lawsuit, because at the time Farah & Farah, P.A. applied for insurance, an insured knew about, but failed to disclose, the potential professional liability claim.  (*See generally* Doc. No. 23, Count I.)  Moreover, Axis contends that prior to the inception date of the Policy, an insured had a basis to believe that there are acts or omissions that might reasonably be expected to be the basis of a malpractice claim.  (*Id.*, Counts II and III.)  Axis seeks a declaratory judgment finding that it is not obligated to defend or indemnify Farah & Farah, P.A., Mr. Farah, Mr. Marrese and Mr. Abbott in the underlying legal malpractice action.

---

[5] The Court will hereinafter refer to this condition as the "prior knowledge provision."

[6] The Policy further defines "Insured," but these additional definitions are not applicable to the instant case.

On August 24, 2011, Axis and Defendants filed cross-motions for summary judgment (Doc. Nos. 89 and 90).   The parties' memoranda in support and in opposition having been filed, to these motions the Court now turns.

## ANALYSIS[7]

In its motion for summary judgment, Axis contends that there is no genuine issue of material fact that an "insured," prior to the Policy inception date, had a basis to believe that an act or omission might reasonably be expected to be the basis of a claim.   (Doc. No. 89, p. 1.)   More specifically, Axis argues that its motion should be granted on the basis of two alternative grounds: (1) Mr. Abbott, an insured under the Policy, was undisputedly aware of the Eleventh Circuit's holding regarding the premature filing of the medical negligence complaint that might have reasonably been expected to be the basis of a claim, and (2) Mr. Marrese, another insured, had a basis to believe that the premature filing of the complaint might have reasonably been expected to be the basis of a malpractice claim because he read the first Eleventh Circuit opinion before the inception date of the Policy, and understood it to hold that the award on the loss of consortium claims was forever lost. (*Id.* at 1-2.)

Defendants contend that Mr. Abbott is not an insured as defined in the Policy.   (Doc. No. 96, p. 13.)   In their cross-motion for summary judgment, Defendants submit that there exists no genuine issue of material fact as to whether, prior to the Axis Policy's inception on June 19, 2009, an insured—which for the purposes of the prior knowledge provision would not include Mr. Abbott or

---

[7] Any arguments raised in the pending motions that are not addressed in this Order have been considered by the Court, but because they either lack merit, are unpersuasive, or simply irrelevant due to the Court's ruling, they are not analyzed herein.

Mr. Marrese[8]—had any basis to believe that an act or omission might reasonably be expected to be the basis of the legal malpractice claim.[9]   (*See generally* Doc. No. 90.)

## I.      Legal Standard on Summary Judgment Motion

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.   *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007)).   Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The moving party bears the burden of showing that no genuine issue of material fact exists.   *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).   Evidence is reviewed in the light most favorable to the non-moving party. *Fennell,* 559 F.3d at 1216 (citing *Forman*, 509 F.3d at 1356).   A moving party discharges its burden by showing that there is an absence of evidence to support the non-moving party's case. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.   *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted).   The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.   *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (stating "conclusory allegations without

---

[8] The Court recognizes that Defendants do not argue that Mr. Marrese is not an insured as defined in the Policy for purposes of coverage, but that he is not an insured for purposes of the prior knowledge provision exclusion.   (*See* Doc. No. 98, p. 7.)

[9] Defendants present an additional argument regarding rescission of the insurance contract.   (*See generally* Doc. No. 90.)   The Court does not, however, need to reach this issue, as Axis has conceded that it is not seeking rescission of the contract in this case.

specific supporting facts have no probative value").   This Court may not decide a genuine factual

dispute at the summary judgment stage.   *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559,

564 (11th Cir. 1990).   "[I]f factual issues are present, the [C]ourt must deny the motion and proceed

to trial."   *Id.* (quoting *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296

(11th Cir. 1983)).

In the context of cross-motions for summary judgment, the denial of one does not require the

Court to grant another.   *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.*, 541 F. Supp. 2d

1295, 1297 (M.D. Fla. 2008).   Finally, "[s]ummary judgment is appropriate in declaratory

judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on

the applicability of the insurance policy, the construction and effect of which is a matter of law."

*Id.*

## II.      The Prior Knowledge Provision Precludes Coverage

### A.      Definition of "Insured" is Not Ambiguous

"The interpretation of an insurance contract is a question of law."   *Kattoum v. N.H. Indem.*

*Co.*, 968 So. 2d 602, 604 (Fla. 2d DCA 2007).   It is undisputed that Florida law governs the

interpretation of Axis's Policy in this case.   "Florida law provides that insurance contracts are

construed in accordance with the plain language of the policies as bargained for by the parties."

*Auto–Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (internal citation omitted).

Accordingly, the scope and extent of coverage are determined by the language and terms of the

Policy, and the Policy terms are given their plain and ordinary meaning.

If the Court is unable to discern a single plain meaning of a Policy provision because the

Policy language is susceptible to more than one reasonable interpretation, then the Court must adopt

the interpretation that favors the insured and provides coverage.   *Swire Pac. Holdings, Inc. v.*

*Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003) (internal citation omitted).   But, the Court may not adopt "a strained and unnatural construction" of Policy language "in order to create an uncertainty or ambiguity."   *Health Options, Inc. v. Kabeller*, 932 So. 2d 416, 420 (Fla. 2d DCA 2006). Finally, the Court must interpret Policy terms in the context of the Policy as a whole and may not consider "an isolated sentence in a Policy as determinative on the question of coverage." *Ellenwood v. S. United Life Ins. Co.*, 373 So. 2d 392, 395 (Fla. 1st DCA 1979); *see also* Fla. Stat. § 627.419(1) (2010) ("Every insurance contract shall be construed according to the entirety of the terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto.").

In the instant case, Defendants contend that two different definitions of the "insured" appear in the insurance contract, one in the Axis Application and the other in the Policy, and that the definition is thereby ambiguous.   (Doc. No. 96, pp. 1-2.)   The Axis Application contains the clause "your firm and any person proposed for coverage," immediately followed by "('the Insured')," thereby, Defendants assert, defining the "insured."   (*Id.* at 7; *see* Doc. No. 21, Ex. B.)   Defendants additionally argue that this definition in the Axis Application is consistent with the Initial Policy Application, which "includes a list of all persons proposed for coverage," where neither Mr. Abbott nor Mr. Marrese was listed.   (*Id.* at 9 and 11.)   They further contend that the Court should find that Mr. Abbott and Mr. Marrese were not "proposed for coverage," and therefore are not insureds for purposes of the prior knowledge provision, because neither attorney had a professional relationship with Farah & Farah, P.A. at the time the law firm applied for coverage.   (*Id.* at 7.)

Moreover, Defendants assert that the "broad" definition of the "insured" as set forth in the Policy, which includes any previously affiliated partner, member, manager, associate or salaried employee, among others, is irreconcilable with the "narrow" definition in the Axis Application,

11

which only includes those attorneys listed in the Initial Policy Application.  (*Id.* at 12.)  Finally, given the "competing definitions of 'Insured,' " Defendants argue that the "narrow definition contained in the Axis Application must determine the scope of Farah & Farah, P.A.'s inquiry into and disclosure of facts or circumstance indicating the probability of a claim."  (*Id.*)

The Court finds that the term "the Insured" is not defined in the Axis Application as Defendants contend.   As Axis notes in its response (Doc. No. 97), it is clear and unambiguous that the term "the Insured," following "your firm and any person proposed for coverage," is referring to persons proposed for coverage, but which persons are proposed for coverage is not defined.   (*Id.* at 3.)  The Initial Policy Application merely states with whom the pre-application inquiry must be made, and it merely lists the attorneys who at that time were affiliated with Farah & Farah, P.A., not those "proposed for coverage."  (*See* Doc. No. 21, Ex. B.)  While this insurance contract is not exactly a model of clarity, considering it in its entirety—the Initial Policy Application, the Axis Application, and the Policy—the Court finds nothing contradictory or ambiguous about the use of the term "the Insured."   If anything, the Court finds that "any person proposed for coverage" is the broad, not narrow, definition of "the Insured," which is limited by the more specific definition set forth in the Policy.   Therefore, the Court rejects Defendants' argument.   "The fact that [D]efendants have come up with an alternative reading of the Policy language is not enough to establish that reasonable [] people may fairly and honestly differ in their construction of the terms." *Capitol Speciality Ins. Co. v. Sanford Wittels & Heisler, LLP*, -- F. Supp. 2d --, Case No. 10-2079, 2011 WL 2530690, *8 (D.D.C. June 27, 2011) (internal quotation marks and citation omitted).

**B.      *Mr. Abbott is an Insured as Defined by the Policy***

Even if the Court finds that the definition of the "insured" is unambiguous, as it now has,

Defendants argue that Mr. Abbott is not an "insured" as defined in the Policy.   (*See* Doc. No. 96,

pp. 13-16; *see generally* Doc. No. 90.)   The Court disagrees.

The Policy defines the "insured," in relevant part, as any lawyers previously affiliated with

Farah & Farah, P.A. as a partner, manager, associate, member, or salaried employee.   (Doc. No. 21,

Ex. B.)   The agreement entered into by Mr. Farah, on behalf of Farah & Farah, P.A., and Mr.

Abbott, in conjunction with the deposition testimony of Mr. Marrese and Mr. Abbott, demonstrate

the extent of the relationship between the law firm and Mr. Abbott.   In support of its assertions that

Mr. Abbott is, at the very least, a former member of the firm, Axis offers the following undisputed

facts, among others: (1) Farah & Farah, P.A. and Mr. Abbott entered into an agreement under which

Mr. Abbott would "provide litigation support, service, direction and decision-making" for certain

cases to Mr. Farah "in-house" (Doc. No. 89, p. 9; Farah Dep. Ex. 34, June 7, 2011, Doc. No. 93, Ex.

C); (2) the firm's name changed from Farah & Farah, P.A. to Farah, Farah & Abbott, P.A. (Doc. No.

35, Ex. 5); (3) the firm's letterhead included the name of "Farah, Farah & Abbott, P.A.," listing its

attorneys to include Mr. Abbott (Farah Dep. Exs. 26 and 40, Doc. No. 93, Ex. C); (4) a fact sheet

printed on the Farah, Farah & Abbott, P.A.'s letterhead identified Mr. Abbott as "senior partner"

and listed his email as fabbott@eddiefarah.com (*Id.*, Dep. Ex. 23); (5) attorneys of Farah, Farah &

Abbott, P.A. working on the select cases that fell under the above-mentioned agreement between

Mr. Farah and Mr. Abbott were under Mr. Abbott's control and reported to him as their supervisor

(Marrese Dep. 43:4, June 8, 2011, Doc. No. 93, Ex. D) ("[Mr. Abbott] was the boss."); and, (6) in

the Fall of 2003, the law firm of Farah, Farah & Abbott, P.A. printed an announcement that the law

firms of Farah & Farah and Abbott & Wiesenfeld have merged into Farah, Farah & Abbott, P.A.

(Abbott Dep. Ex. 72, June 20. 2011, Doc. No. 88, Ex. 4).

In support of its assertions that Mr. Abbott was a manager at Farah and Farah, P.A., Axis

submits that:

> Mr. Abbott was responsible for putting policies in place for the purposes of managing plaintiff's bodily injury and wrongful death cases at the firm; Mr. Abbott had authority to have employees who could not meet his standards terminated or transferred[;] and[,] Mr. Abbott was responsible for developing a system to train new attorneys in this area of the law for the firm.

(Doc. No. 89, p. 9 (citing Farah Aff. ¶ 16 and Ex. A at 13-18, Doc. No. 55).)   Under the plain and

ordinary meaning of the word, Axis argues, "[a]ll of these duties and responsibilities are managerial

in nature."   (*Id*. (citing *Black's Law Dictionary 778* (7th ed. 2000) (defining "manager" as a person

who administers or supervises the affairs of a business, office, or other organization)).)

Despite the overwhelming body of uncontroverted evidence, Defendants strongly dispute

that Mr. Abbott was a previously affiliated member or manager.   They contend that all the facts

Axis presented merely show that Mr. "Abbott managed, profited from, and had an interest in

particular cases" subject to the fee-sharing agreement.   (Doc. No. 96, p. 14.)   Furthermore,

Defendants assert that the Policy's definition of an "insured" does not include attorneys with whom

the law firm "once maintained a fee-sharing agreement."   (*Id.*)   Moreover, Defendants add that

Mr. Abbott never testified that he was a member of Farah & Farah, P.A. or Farah, Farah & Abbott,

P.A., and Mr. Farah testified that he did not consider Mr. Abbott a member of the firm.   (*Id.* at

15-16.)

The Court strongly believes that actions speak louder than words.   If the Court were to

consider the actions of Mr. Farah, Mr. Abbott and Mr. Marrese while they practiced together on

behalf of Farah, Farah & Abbott, P.A., there is no reasonable mind that could find that Mr. Abbott

14

was not a manager of the personal injury and wrongful death area of practice or a member of that firm.   Simply saying that Mr. Abbott was not "considered" a member or a manager of the firm is of low, if any, probative value.   In its conclusion, the Court considers the fact that Mr. Abbott's name was in the firm's name and on the firm's letterhead, the fact that Mr. Abbott had controlled, directed and supervised Farah, Farah & Abbott, P.A.'s employees, the fact that Mr. Abbott shared offices with other Farah, Farah & Abbott, P.A. attorneys, and, the fact that he was held out to the public as a member of the same to be determinative of this issue.   Thus, the Court finds that Mr. Abbott is an insured as defined under the Policy.[10]

**C.     No Genuine Issue of Material Fact Exists as to Whether an Insured, Prior to The Inception Date of The Policy, Had a Basis to Believe That an Act or Omission Might Reasonably be Expected to be The Basis of a Claim**

Courts routinely affirm the denial of coverage where an insurance policy contains an unambiguous prior knowledge provision and where an insured has knowledge, prior to the effective date of the policy, of acts or omissions that might reasonably provide the basis for a claim.   *See, e.g., Lawyers Prof'l Liab. Ins. Co. v. Dolan, Fertig & Curtis*, 524 So. 2d 677, 678 (Fla. 4th DCA 1988) (holding prior knowledge provision clearly and unambiguously barred coverage for claim of which insureds were aware before policy's effective date); *McCollum*, 961 F. Supp. at 1579 (same). In this case, "the prior knowledge provision essentially makes fortuity a condition of coverage.

---

[10] To find otherwise would be contrary not only to the facts but to the position the law firm took vis-à-vis the public as required by the Florida Rules of Professional Conduct.   Specifically, the Court assumes that attorney Defendants abided by the Fla. Stat. Ann. Bar Rule 4-7.9, prohibiting usage of a firm name, letterhead or other professional designation that is false, misleading or deceptive, and forbidding attorneys from stating or implying that they practice in a partnership or authorized business entity unless that is the fact.   If the shoe were on the other foot and Axis tried to argue that Mr. Abbott is not an insured as defined in the Policy, Axis would not have been able to meet that burden.

The prior knowledge provision indicates in clear and unambiguous language [the insurance company's] unwillingness to cover liability arising from prior acts or omissions that any insured might reasonably be expected to result in a claim."   *Bryan Bros. Inc. v. Cont'l Cas. Co.*, -- F.3d --, Case No. 10-1439, 2011 WL 4407522, *4 (4th Cir. Mar. 24, 2011).

The record stands undisputed that Mr. Abbott, an insured, believed that premature filing of the Turners' medical negligence complaint could reasonably be expected to be the basis of a malpractice claim.   (Abbott Dep. 19:17 – 20:4, and Ex. 49, June 20, 2011, Doc. No. 88-4 (advising the Turners on or about April 20, 2009 that they could have a legal malpractice claim).)   On this basis alone, Axis has sufficiently shown that there is no genuine issue of a material fact as to whether coverage for the underlying legal malpractice claim should be denied.

Alternatively, Axis contends that Mr. Marrese also had a basis to believe that the premature filing of the complaint in the Turners' medical negligence case could reasonably be expected to be the basis of a legal malpractice action.   (*See* Doc. No. 89, pp. 16-18.)   Axis submits that "the Eleventh Circuit's opinion clearly states that the Turner[s]' loss of consortium claims are lost forever" because "the Turners' trial counsel . . . fil[ed] the complaint prematurely."   (*Id.* at 17.)   Mr. Marrese admits to having read the opinion shortly after it was published and having understood one of its holdings to be that the award on the loss of consortium claims was lost.   (Marrese Dep. 26:18 – 27:24, 32:6-17, Doc. No. 88-5.)   However, Mr. Marrese denies ever thinking or believing that could be the basis of a legal malpractice claim.   (*Id.* at 30:15-24; 68:6-16.)

Axis argues that objectively "any reasonably attorney reading that opinion would understand that where the [Eleventh Circuit] states that [the Turners'] claims are lost forever and they are lost because of the actions of [the Turners'] attorney, that a potential claim for malpractice exists." (Doc. No. 89, p. 18.)   Therefore, it argues that no genuine issue of fact exists as to whether the prior

knowledge provision applies to exclude coverage.   (*Id.*)   On the other hand, Defendants argue that a subjective standard should be applied in this instance, and because Mr. Marrese denies having believed there was a potential basis of a legal malpractice claim, Axis cannot meet its burden at this stage in the proceeding.   (Doc. No. 90, pp. 33-37.)

In light of the Court's holding that Mr. Abbott is an insured who prior to the inception date of the Policy knew of a potential malpractice claim, the Court need not reach the issue of whether an objective or subjective standard should be applied.   The Court is inclined to hold, however, that Axis cannot show that Mr. Marrese even objectively had a basis to believe that the premature filing of the medical negligence complaint could be expected to be the basis of a legal malpractice claim until the Eleventh Circuit Court issued its second decision affirming Judge Adams's findings on remand on February 18, 2009.   (*See* Abbott Dep. 146:8-22 ("[I]f Judge Adams didn't find there was willful, wanton or gross [*sic*], there's no basis to be sued.").)   Although Axis asserts that the record contains sufficient evidence to support the reasonable inference that Mr. Marrese was aware of the second Eleventh Circuit decision (*see* Farah Dep., Ex. 35, Doc. No. 93, Ex. C) (closing statement evidencing payouts to Mr. Abbott, Mr. Marrese, and Mr. Farah), the closing statement was signed on August 24, 2009, over two months after the Policy's inception date.   Therefore, Axis's alternative basis for summary judgment is denied.

## CONCLUSION

Based on the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  Plaintiff AXIS INSURANCE COMPANY's Motion for Summary Judgment (Doc. No. 89), filed on August 24, 2011, is **GRANTED in part and DENIED in part**.

2.  Defendants FARAH & FARAH, P.A., EDDIE FARAH, and MICHAEL D. MARRESE's Motion for Summary Judgment (Doc. No. 90), filed on August 24, 2011, is **DENIED**.[11]

3.  All other pending motions are **DENIED as MOOT**.

4.  The Clerk shall enter a **FINAL JUDGMENT** providing as follows:

    a.  The Court hereby declares that (1) there is no coverage for claims arising out of the Turners' medical negligence case under policy no. MCN 718206/01/2009, and (2) Axis Insurance Company is not obligated to defend or indemnify Defendants in the legal malpractice lawsuit brought against them by the Turners. Judgment shall also provide that Axis Insurance Company shall recover its costs of action.

5.  The Clerk shall close the file.

**DONE** and **ORDERED** in Chambers, in Jacksonville, Florida on November 10, 2011.

ROY B. DALTON JR.
United States District Judge

Copies furnished to:

Counsel of Record

---

[11] The Court notes that it would have denied Defendants' motion for summary judgment even if it found that the definition of the "insured" was ambiguous and that Mr. Abbott is not an insured as defined in the Policy, because there remain disputed issues of material fact as to whether Mr. Farah had a basis to believe that the premature filing of the complaint might have reasonably been expected to be the basis of the legal malpractice claim.

18

Unrepresented Party